Accordingly, the summary judgment under review is affirmed.

JOHN S. KATSOUFRIS, INDIVIDUALLY AND JOHN S. KATSOUFRIS AS ATTORNEY-IN-FACT FOR DROMAN SHIPPING COMPANY, S.A., PLAINTIFF-APPELLANT, v. ROBERT ADAMO, GEORGE NATSIKOSTAS AND THEODORE KARAVIAS, DEFENDANTS-RESPONDENTS.

and

ANK SHIPPING COMPANY, S.A., DEFENDANT.

Superior Court of New Jersey
Appellate Division

Submitted February 24, 1987—Decided March 20, 1987.

Before Judges PRESSLER, BAIME and ASHBEY.

*Bitner & Haft,* attorneys for appellant John S. Katsoufris (*Eric S. Kapnick,* on the brief).

*John J. Pribish,* attorney for respondents Robert Adamo, George Natsikostas and Theodore Karavias (*Adrienne C. Rogove,* on the brief).

The opinion of the court was delivered by BAIME, J.A.D.

This is an appeal from a summary judgment in favor of defendants Adamo, Natsikostas and Karavias dismissing the complaint of plaintiff Katsoufris. Plaintiff argues that the affidavits and certifications submitted to the trial court raised genuine issues of material fact and therefore summary judgment was improvidently granted. We agree and are thus constrained to reverse.

We need not recount the facts at length. Plaintiff instituted this action to recover amounts allegedly due on a series of

promissory notes which defendants signed as guarantors for ANK Shipping Company (ANK). The notes evidenced an obligation emanating from a prior transaction whereby ANK had purchased a merchant ship from plaintiff for the sum of $415,-000. At the time of the agreement ANK paid plaintiff the amount of $150,000 and executed promissory notes for the balance of the agreed upon purchase price. When title was transferred to ANK, plaintiff obtained a purchase money mortgage to secure the amount owed.

It is undisputed that ANK failed to make timely payments. In order to induce plaintiff to forbear from initiating foreclosure proceedings, ANK agreed to a renegotiation of the underlying obligation. As part of that transaction, ANK executed a new series of 48 promissory notes. Defendants, the principal shareholders of ANK, signed the notes as guarantors of the corporate obligation.

Despite obtaining various charters, ANK's financial condition remained extremely precarious. When ANK defaulted on the payment of wages, the crew mutinied on the high seas and sailed the ship to a port in Puerto Rico where it was seized by creditors, and an *in rem* foreclosure proceeding was commenced in the United States District Court.

Unfortunately, the paltry record is not wholly informative with respect to exactly what transpired in the federal proceedings. In an affidavit submitted to the trial court, the wife of defendant Natsikostas stated "on information and belief" that plaintiff initially filed a claim as first mortgagee in the federal foreclosure action. According to the affidavit, this claim was subsequently dismissed because of plaintiff's failure to timely prosecute and his delay in complying with the court's orders.[1] In response, plaintiff filed a reply certification in which he

---

[1]While this appeal was pending, defendants moved to supplement the record with the order of the United States District Court. We now grant defendants' motion. The order provides that plaintiff's claim is dismissed for "failure to abide by [a prior] court order, and for lack of prosecution."

stated that he decided not to pursue his claim because of the number and amounts of paramount liens that had been filed against the ship. According to plaintiff, seamen's wage claims alone exceeded $110,000. In addition, suppliers of "bunkers" (oil and provisions) also filed claims having priority over the lien of the first mortgagee. Plaintiff thus contended that it would have been futile had he continued to pursue his claim in the time-consuming and expensive federal proceedings.

Based upon this meager record, the trial judge denied plaintiff's application for summary judgment and granted defendants' cross-motion. In a brief oral opinion, the judge held that plaintiff, by failing to prosecute his claim in the federal proceedings, wrongfully impaired the collateral securing ANK's debt. The judge concluded that plaintiff's failure to protect the security discharged defendants' obligation as guarantors of ANK's debt.

■ Our thorough review of the record convinces us that the affidavits and certifications submitted to the trial court presented substantial factual issues which should not have been resolved by way of a summary judgment. Initially, we note the deficiencies in the affidavit submitted by defendants in support of their cross-motion for summary judgment. *R.*1:6–6 governs the use of such affidavits. It provides that affidavits must be made on "personal knowledge setting forth ... facts which are admissible in evidence to which the affiant is competent to testify." *R.*1:6–6. It is axiomatic that "affidavits may not be based merely upon 'information and belief' or other objectionable hearsay...." *Beckwith v. Bethlehem Steel,* 185 *N.J.Super.* 50, 56–57 (Law Div. 1982). *See also Patrolman's Benevolent Assn. v. Montclair,* 70 *N.J.* 130, 133–134 (1976); *Smithey v. Johnson Motor Lines,* 140 *N.J.Super.* 202, 207 (App.Div. 1976). Here, the affidavit of defendant Natsikostas' wife contained rank hearsay both with regard to the events leading up to the seizure of the ship and to what transpired in the federal

court proceedings. Succinctly stated, her affidavit did not in any sense comport with the requirements of *R.*1:6–6.

Putting that deficiency aside, we find that plaintiff's certification raised significant factual issues concerning whether and to what extent his inaction in the federal proceedings served to prejudice defendants' rights. We begin with the well-recognized principle that a release of collateral held by a creditor, or its impairment by improper action or inaction on his part, will extinguish the obligation of the surety, at least to the extent of the value of the security released or impaired. *Langeveld v. L.R.Z.H. Corporation,* 74 *N.J.* 45, 50–51 (1977). This rule has its genesis in our common law, *see Van Hoesen v. Gelfen,* 103 *N.J.Eq.* 234, 238 (Ch. 1928), aff'd 110 *N.J.Eq.* 69 (E. & A. 1931) and is currently codified in *N.J.S.A.* 12A:3–606. It has been said that "[t]he doctrine is an equitable one, designed to protect the surety's right of subrogation." *Langeveld v. L.R.Z.H. Corporation, supra,* 74 *N.J.* at 51. Upon paying the debt, the surety is, as a matter of law, subrogated to all the creditor's rights against the principal debtor and is entitled to all benefits derivable from any security of the principal debtor that may be in the creditor's hands. *Ibid.* The rule forbidding impairment of collateral "has as its chief aim the protection of these potential benefits made available through subrogation." *Ibid.* *See also Bank of New Jersey v. Pulini,* 194 *N.J.Super.* 163, 167 (App.Div.1984).

Nevertheless, a surety is not automatically discharged where his creditor, through inaction, has impaired the collateral securing the primary obligation. *Id.* at 167. Our Supreme Court has rejected the rule of *strictissimi juris* under which a surety is completely discharged by any impairment of collateral, whether or not he has sustained loss or prejudice. In *Langeveld v. L.R.Z.H. Corporation, supra,* the Court adopted the principle that the obligation of the guarantor is discharged or released only to the extent that he has been disadvantaged by the creditor's failure to adequately protect the collateral. 74

*N.J.* at 56. If the impairment of collateral can be measured in monetary terms, then the calculated amount of the impairment will ordinarily measure the extent of the surety's discharge. *Ibid.* However, there are factual situations—this may or may not be one of them—where a surety may be able to establish that he has sustained prejudice, but be unable to measure its extent in terms of monetary loss. *Ibid.* "Where such a situation is presented the surety will normally be completely discharged." *Id.* at 57.

In that context, we emphasize the factual questions presented here. Plaintiff argues that, as a first mortgagee, his claim in the federal *in rem* proceedings was subordinate to the liens and priorities of a large number of creditors. We note in that regard that under federal admiralty law the rights of a holder of a "preferred mortgage lien" in the case of a foreign vessel are inferior to "maritime liens for repairs, supplies, towage, use of drydock or marine railway, or other necessaries, performed or supplied in the United States." 46 *U.S.C.* § 951. So too, the rights of a preferred mortgage lienholder are subordinate to "preferred maritime liens" for "damages arising out of tort, for wages of a stevedore when employed directly by the owner, operator, master, ship's husband, or agent of the vessel, for wages of the crew, ... for general average, and for salvage, including contract salvage." 46 *U.S.C.* § 953. *See Merchants & Marine Bank v. The T.E. Welles,* 289 *F.*2d 188, 193 (5 Cir.1961); *Morgan Guaranty Trust Co. of New York v. M.V. Gregorios C. IV,* 615 *F.Supp.* 1444, 1453–1454 (E.D.La.1985); *West of England Ship Owners v. Patriarch S.S. Co.,* 491 *F.Supp.* 539, 544 (D.Mass.1980).

The sketchy affidavits submitted to the trial court and presented to us on appeal do not disclose the number, types and amounts of maritime liens, 46 *U.S.C.* § 951, and preferred maritime liens, 46 *U.S.C.* § 953, with the exception of the crewmen's claim, enjoying priority over plaintiff's first mortgage, that were filed in the federal *in rem* foreclosure proceed-

ings.  Nor does the record reveal the market value of the ship at the time of the foreclosure or the amount realized from the forced sale.  We agree that it was not incumbent upon plaintiff to pursue his first mortgage claim in the foreclosure proceeding if, as the record to some extent suggests, there was no reasonable likelihood of obtaining partial or total satisfaction of the debt owed by ANK, the principal obligor, by taking such a course.  We emphasize, however, that the meager record is entirely uninformative in that respect.

We are thus constrained to reverse the summary judgment and to remand the matter to the trial court for a plenary hearing to determine whether and to what extent defendants' rights were disadvantaged by reason of plaintiff's failure to prosecute his claim in the federal proceedings.[2]  The factual issues presented preclude the entry of summary judgment. *Judson v. Peoples Bank & Trust Co. of Westfield*, 17 *N.J.* 67, 75 (1954).  Rather, the facts must be found and assayed to determine their effect, if any, with respect to the alleged impairment of collateral.  *Langeveld v. L.R.Z.H. Corporation, supra*, 74 *N.J.* at 56.

Accordingly, the summary judgment entered by the Law Division is reversed and the matter is remanded for a plenary hearing.

---

[2]We find no merit in defendants' contention that plaintiff was bound by the "entire controversy doctrine" to join them in the federal proceedings.  *R.* 2:11–3(e)(1)(E).  The point does not require discussion.  We merely add that defendants were fully aware of the foreclosure proceedings and took no measures, formal or informal, to protect their position or prevent the forced sale of the ship.